IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOYLE "ROCKY" BROWN,

                 Plaintiff,

vs.                                            Civ. No.  08-453 JCH/RLP

BRENT McGILL and
MUELLER SUPPLY CO., INC.,

                 Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Motion to Alter or Amend the Court's Judgment*, filed March 17, 2010 [Doc. 140].  Plaintiff's motion comes in response to the Court's Memorandum Opinion and Order, filed March 8, 2010 [Doc. 136].  The Court's Memorandum Opinion and Order denied Plaintiff's *Motion for Summary Judgment on his Claims for Violations of the Family and Medical Leave Act* [Doc. 93] and granted Defendant's *Motion for Summary Judgment* [Doc. 90].  The Court entered a Final Judgment in this case on March 8, 2010 [Doc. 137].  The Court, having carefully considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Plaintiff's motion is not well-taken and should be DENIED.

## BACKGROUND

The facts of this case are set forth in greater detail in the Court's Memorandum Opinion and Order at 2-8.  In short, Plaintiff, now deceased, was an employee of Defendant Mueller Supply Company ("Mueller"), where he worked from October 8, 2002 until February 7, 2007.[1]

---

[1] Because Doyle Brown is now deceased, he has been terminated as a plaintiff and replaced by his estate's personal representative, Gabrielle Valdez.  However, because Mr. Brown

Defendant Brett McGill ("McGill") was Plaintiff's supervisor.  Plaintiff worked for Mueller as a Warehouse Supervisor, and, as such, his duties were to lead, manage, and supervise both the warehouse and the shipping and receiving operations.  In April of 2005, Plaintiff told McGill that his doctors believed he had cancer and that he would need surgery.  McGill told Plaintiff to take the time he needed to get the surgery and to recover, and gave him paperwork related to the Family and Medical Leave Act ("FMLA") to fill out.  At the time McGill gave Plaintiff the FMLA paperwork, he knew that Plaintiff was technically not eligible for FMLA coverage because Mueller did not have 50 employees within 75 miles of its warehouse, but he did not inform Plaintiff of that fact.  In its Memorandum Opinion and Order, the Court found that Plaintiff had come forward with sufficient evidence of an implied contract to provide him with FMLA rights and that Defendants' oral and written statements made it objectively reasonable for Plaintiff to believe he had full FMLA rights as part of his employment with Mueller.  *See* Doc. 136 at 15.  The Court therefore assumed, for purposes of summary judgment, that Plaintiff was entitled to all of the rights provided for by the FMLA.  *See id*.

The paperwork Mueller provided to Plaintiff indicated that he had a right under the FMLA to take up to twelve weeks of unpaid leave in a twelve month period.  Upon returning to work after his surgery, Plaintiff began taking a significant number of days of leave without pay for medical reasons.  On January 31, 2006, Mueller provided Plaintiff with another FMLA form for additional FMLA leave that he was taking.  At that time, Mueller placed Plaintiff on intermittent FMLA leave because he had missed an extensive amount of work in the eight months following his surgery.  Over the next twelve months, Plaintiff again took extensive leave

---

was still the named plaintiff at the time this motion was filed, the Court will refer to him as "Plaintiff" throughout this opinion.

for his medical condition.  On January 2, 2007, McGill sought advice from his supervisor regarding performance issues that Plaintiff had been experiencing.  The next day, Defendants presented Plaintiff with a "Performance Improvement Plan," addressing their concerns about issues relating to his job as the warehouse manager and setting expectations regarding his future performance.

On January 24, 2007, Plaintiff brought a doctor's note to work, stating that he needed to go on leave again, but that he could return to work on February 8, 2007.  On February 7, 2007, Defendants sent Plaintiff a letter informing him that from the period January 31, 2006 through February 1, 2007, he had exhausted his twelve weeks of FMLA leave, and that he had no additional leave remaining until at least March 1, 2007.  Also on February 7, 2007, Plaintiff brought in another doctor's note stating that he needed an additional three weeks of leave, and that he could return to work on March 1.  There is no question that, at the time he presented this note, he had exhausted the leave to which he was entitled under the FMLA.  The following day, Defendants terminated Plaintiff's employment, citing poor work performance and excessive absenteeism.

Following his termination, Plaintiff brought suit, asserting claims for disability discrimination in violation of the Americans with Disabilities Act and the New Mexico Human Rights Act, violations of the FMLA, breach of contract, and intentional infliction of emotional distress.  The Court's Memorandum Opinion and Order granted summary judgment to Defendants on each of these claims.  Plaintiff's instant motion seeks only to have the Court reconsider its ruling on Plaintiff's FMLA claim and his breach of contract claim.[2]  *See* Pl. Mot.

---

[2] Because Plaintiff's breach of contract claim is premised on the alleged denial of his FMLA rights the Court need only analyze the FMLA claim for purposes of this motion.

[Doc. 140] at 1 n. 1.

## LEGAL STANDARD

Plaintiff timely filed his motion to reconsider pursuant to Fed. R. Civ. P. 59(e).  A motion to reconsider is warranted in the event of "(1) an intervening change in controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion to reconsider is also "appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  *Id.*  However, "a motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."  *Voelkel v. General Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir. Dec. 21, 1994) (table).

## DISCUSSION

Plaintiff contends that the Court should revisit its ruling because manifest injustice will result if the Court's decision stands, because the Court has misapprehended Plaintiff's position and the facts in the record as they relate to the amount of leave Plaintiff took prior to his termination and the amount of leave to which Plaintiff was entitled.  However, Plaintiff's motion relies on an attempt to disavow previously admitted facts and a misunderstanding of how eligibility for FMLA leave is calculated.[3]

    A.    <u>Amount of Leave Taken</u>

---

[3] Plaintiff also contends that Defendants violated the FMLA by not providing Plaintiff with notice that the leave he sought to take would be unprotected.  Plaintiff did not make this argument in his summary judgment brief, or in his brief opposing Defendants' motion for summary judgment.  It is improper to set forth a new theory in a Rule 59(e) motion, and the Court will therefore not address it.  *See Servants of the Paraclete*, 204 F.3d at 1012.

In their Statement of Undisputed Facts ("UF") ¶ 35, Defendants alleged that: "When Plaintiff brought in the doctor's note on January 24, 2007, he had already used <u>62 full days (12.4 weeks)</u> of medical leave since February 1, 2006."  Memorandum in Support of Defendants' Motion for Summary Judgment ("Deft. SJ Mem.") [Doc. 91] at 8 (emphasis in original). Paragraph 35 went on to contend that "Plaintiff alleges he was not informed these absences were 'near the limit;' however, he admits that, regardless of what he would have been told, the leave from January 24 to February 8 [2007] was 'medically necessary' and he 'needed to take [the] leave.'  *Id*.

Although, in his response to Defendants' Statement of Facts, Plaintiff disputed paragraph 35, he did so solely with respect to the second part of the paragraph, writing only that "Plaintiff testified that his doctor felt rest would do Plaintiff some good. Additionally, Plaintiff testified that he could have come to work during this period of time, though he would have been in pain." Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl. SJ. Resp.") [Doc. 104] at 5.  By not addressing Defendants' contention regarding the amount of medical leave taken by Plaintiff, or offering any facts to challenge Defendants' assertion, Plaintiff admitted the fact for summary judgment purposes.  *See* D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.").

Defendants' UF paragraph 36 referenced the letter sent by Mueller to Plaintiff on February 7, 2007, informing him that, as of February 1, 2007, he had exhausted his twelve weeks of FMLA leave.  *See* Deft. SJ Mem. at 8-9.  Paragraph 36 also contended that Plaintiff did not dispute that he had exhausted his twelve weeks of leave, citing Plaintiff's deposition testimony. *Id*.  In responding to Defendants' paragraph 36, Plaintiff wrote that he "does not dispute Paragraph 36, in that one of Defendants' absentee records showed that as of February 1, 2007, Plaintiff had exhausted twelve weeks of designated FMLA leave. In as much as Defendants

contend otherwise, Plaintiff disputes Paragraph 36." Pl. SJ Resp. at 5. Thus, once again, Plaintiff appears to have admitted Defendants' contention that he exhausted his twelve weeks of leave by February 1, 2007.

Similarly, Defendants' UF paragraph 37 asserts that "As of February 7, 2007, the Absentee History Report...shows Plaintiff missed 71 full days (14.1 weeks) for intermittent medical leave since February 1, 2006. Plaintiff does not dispute that he missed that many days for medical leave, and, on each of those days, he could not have performed all of the duties of his job." Deft. SJ Mot. at 9 (emphasis in original). Plaintiff responded that he "does not dispute [paragraph 37], in that one of Defendants absentee records showed that as of February 7, 2007, Plaintiff had used 71 full days for intermittent designated FMLA leave. In as much as Defendants contend otherwise, Plaintiff disputes Paragraph 37." Pl. SJ Resp. at 5. Plaintiff also expressly disputed the contention that he could not have performed all of the duties of his job, but rather asserted that he simply could not have performed up to his own expectations. *Id.*

Plaintiff's only challenge to Defendants' absence figures comes in his Statement of Additional Facts, where Plaintiff states that McGill's documentation, which he used to track Plaintiff's absences, shows that Plaintiff took less leave than the documentation that Mueller relied on to support their claim that Plaintiff exceeded twelve weeks of FMLA leave. Pl. SJ Resp. at 7-8. However, in the deposition testimony cited by Plaintiff to support this assertion, McGill indicates that his documentation is likely missing a number of absences and that the documentation relied on by the company is more accurate because it is derived from the company's official timekeeping program. *See* Ex. 4A, attached to Pl. SJ Resp. [Doc. 94] at 334-35; 360-61. In addition, the documentation on which McGill relied still showed that, by February 7, 2007, Plaintiff had exceeded twelve weeks of FMLA leave in the past twelve

months.  Prior to summary judgment, Plaintiff offered nothing to demonstrate that he had not

exhausted or exceeded the twelve weeks.  Thus, regardless of which documentation Defendants

relied upon, the Court properly relied on Plaintiff's admissions and Defendants' exhibits to find

that, at the time of his termination, Plaintiff had exhausted the FMLA leave to which he was

entitled and that he had no leave remaining at the time he sought to take an additional three

weeks.

      B.    <u>The Manner in which Eligibility for FMLA Leave is Calculated</u>

      Plaintiff's motion for reconsideration relies on a fundamental misunderstanding of the

manner in which eligibility for FMLA leave is calculated.  Plaintiff contends that "[b]ecause

Defendants used a "rolling" method of calculating FMLA leave for their employees...and

Plaintiff began his intermittent FMLA leave on <u>January 31, 2006</u>, Plaintiff would have been

eligible to apply for an additional twelve weeks of FMLA leave after twelve months, or on

<u>February 1, 2007</u>."  Pl. Mot. [Doc. 140] at 6 (emphasis in original).[4]  This presumes that an

employee is eligible for an additional full twelve weeks of FMLA leave on the one-year

anniversary of when he first took intermittent FMLA leave.  This interpretation would be correct

if the employer calculated the twelve month period measured forward from the date of the

employee's first FMLA leave, as provided for in 29 C.F.R. § 825.200(b)(3).  However, Mueller

did not elect to use this method.  Instead, Mueller elected to calculate FMLA leave on a "rolling"

basis.  *See* Doc. 91, Ex. H.  Under this method of calculation, "each time an employee takes

---

    [4] Incidentally, Plaintiff's motion for reconsideration admits that he had exhausted the
leave to which he was entitled.  *See* Pl. Mot. at 1 ("[Plaintiff] produced evidence that he had only
exhausted and not exceeded the leave he was entitled to.").  Because, as discussed in this section,
Plaintiff's exhaustion of his FMLA leave meant that he had no leave remaining with take an
additional three weeks, the question of whether he had previously exceeded his allotted leave or
merely exhausted it is immaterial.

FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months."  29 C.F.R. § 825.200(c).  In other words, under the "rolling" method, if an employee took one week of FMLA leave at the beginning of January, and took an additional eleven weeks from September through the end of the year, when January came around again, he would be eligible for only one week of leave. Once that week was exhausted, he would not be eligible for leave again until September, because prior to that, he would have used twelve weeks in the preceding twelve months.

Because Plaintiff had taken twelve weeks of leave in the twelve months immediately preceding February 7, 2007, he had no FMLA leave eligibility remaining when he sought to take an additional three weeks, and, thus, Defendants did not violate the FMLA by terminating him for attempting to take an additional extended absence.  *See* Department of Labor Wage and Hour Division opinion letter, dated November 17, 2005 (FMLA2005-3-A) (demonstrating the proper manner of calculating eligibility for leave under the "rolling" method and confirming that, once an employee has used twelve weeks of leave in any twelve month period, "the employee is no longer eligible for the protections afforded by the [FMLA]").

<u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Alter or Amend the Court's Judgment* [Doc. 140] is DENIED.

_____
**UNITED STATES DISTRICT JUDGE**

8